UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:11-cr-00205-JAW-9 |
| | ) | |
| KELVIN MALLY, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON MOTION TO SUPPRESS**

This matter was heard on March 31, 2014, on Defendant's Motion to Suppress. Through his motion, Defendant contends that law enforcement lacked a legal basis to stop the vehicle in which he was a passenger on November 4, 2011. Defendant, therefore, seeks to exclude from trial the evidence obtained by law enforcement following the stop of the vehicle.

**FACTUAL BACKGROUND**

The evidence at the hearing revealed that in November 2011, the Maine Drug Enforcement Agency (MDEA) was involved in an investigation of drug related activity focused on individuals who either resided at or frequented a duplex located at 100-102 Ohio Street in Bangor, Maine. Manuel Trinidad-Acosta and Pari Proffitt were among the individuals who were known to reside at the Ohio Street location.

During the investigation, law enforcement learned that several individuals from the Bronx, New York, including Mr. Trinidad-Acosta and Ms. Proffitt, were involved in the sale and distribution of cocaine in the Bangor area. As of November 3, 2011, law enforcement was aware that Mr. Trinidad-Acosta regularly changed vehicles, and was last seen driving a black Lexus with Maine registration plates.

As part of the investigation, on November 3, 2011, MDEA agents executed a search warrant for the residence at 100-102 Ohio Street. Because the investigation had revealed that the targets of the investigation had access to and had used dangerous weapons, MDEA enlisted the assistance of the SWAT team. When law enforcement executed the warrant, the individuals in the residence did not immediately come to the door or exit the building. As a result, law enforcement used tear gas to force the individuals to exit the building. Law enforcement subsequently conducted a search of the building.

During the search, law enforcement did not find cash or cocaine, nor did they locate Ms. Proffitt or Mr. Trinidad-Acosta. They did, however, find paperwork that included what law enforcement believed to be drug transaction ledgers. Law enforcement also found paperwork that included the names of some of the suspects, and the address (111 Garland Street) of another residence for which Mr. Trinidad-Acosta and Ms. Proffitt were tenants.

After obtaining a warrant, law enforcement conducted a search of the Garland Street residence. In the search, law enforcement located a safe in which they found drugs and a firearm. They also found certain paperwork, which included a lease in Ms. Proffitt's name for a residence at 39 Maple Street in Brewer, Maine.

Upon learning of the Maple Street residence, MDEA Special Agent Lori Renzullo, who had been involved in the searches, called Sergeant Anthony Pinnette of the Brewer Police Department and requested that he drive by the Maple Street location. Special Agent Renzullo informed Sgt. Pinnette that law enforcement was searching for Mr. Trinidad-Acosta and Ms. Proffitt, who were known to drive a black Lexus with Maine plates.

Sgt. Pinnette, in a marked Brewer police vehicle, located the residence, which is a multi-family unit. From a distance, Sgt. Pinnette observed a black vehicle parked at the end of the

driveway that was adjacent to the building. He could not identify the make of the vehicle, or the license plate, but he believed that the vehicle was a Lexus.

To avoid detection during his surveillance activities, Sgt. Pinnette relocated his position to South Main Street, which is perpendicular to Maple Street. Once relocated, Sgt. Pinnette could not see the Maple Street residence. However, because there was limited egress from Maple Street, Sgt. Pinnette positioned himself to be able to see vehicles leaving Maple Street. Maple Street is a relatively short residential street, which can be accessed from South Main Street. While the primary means of egress directly from Maple Street is on to South Main Street, one could also exit Maple Street to South Main Street by way of Winter Street.

While stationed on South Main Street, Sgt. Pinnette observed a black vehicle enter South Main Street from Maple Street. The vehicle looked similar to the vehicle that he saw in the driveway at 39 Maple Street. Sgt. Pinnette followed the vehicle, and observed that the vehicle was a Toyota with New York registration plates. Through the local dispatch, Sgt. Pinnette learned that the vehicle was registered to Anna Maria Martinez of Bronx, New York. Special Agent Renzullo had seen this name on an envelope in one of the residences that law enforcement searched earlier. Sgt. Pinnette called Special Agent Renzullo to report his observations and the information that he learned from dispatch. After listening to Sgt. Pinnette's report, Special Agent Renzullo directed Sgt. Pinnette to stop the vehicle. Sgt. Pinnette then stopped the vehicle, and eventually identified Defendant as a passenger in the vehicle.

## DISCUSSION

Defendant contends that law enforcement's stop of the vehicle was unreasonable and, therefore, the Court should grant the motion to suppress. More particularly, Defendant maintains that because the vehicle was not the Lexus that Mr. Trinidad-Acosta and Ms. Proffitt were known

to drive, and because one could not assume that a vehicle exiting Maple Street originated from 39 Maple Street, Sgt. Pinnette did not have a reasonable articulable suspicion that Mr. Trinidad-Acosta or Ms. Proffitt was in the vehicle, or that the vehicle was otherwise related to criminal activity.

The Government bears the burden of establishing that its stop of the vehicle in question complied with the Fourth Amendment. *United States v. Lopez*, 380 F.3d 538, 543 (1st Cir. 2004). "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio,* 392 U.S. 1, 9 (1968)). To justify the warrantless stop of a vehicle, officers must be able to articulate why there are "specific and articulable facts which, taken together with rational inferences," generate a reasonable suspicion that criminal activity "may be afoot." *Terry*, 392 U.S. at 21, 30. This standard, known as the "reasonable suspicion" standard, is easier to meet than the probable cause standard required to obtain a warrant. However, the reasonable suspicion standard is not satisfied if the officers point to facts that do nothing more than generate a hunch that a vehicle or its occupants may be involved in criminal activity. *Id.* at 22. In satisfying this standard, officers are able to rely on one another's knowledge of the facts and circumstances to form the conclusion that a stop is justified. *United States v. Barnes,* 506 F.3d 58, 63 (1st Cir. 2007) ("[R]easonable suspicion can be imputed to the officer conducting a search if he acts in accordance with the direction of another officer who has reasonable suspicion."); *United States v. Meade*, 110 F.3d 190, 193 (1st Cir. 1997) (discussing the "fellow-officer/collective-knowledge rule"). Although Defendant was only a passenger in the vehicle, he has standing to challenge the lawfulness of the

stop because the stop resulted in the temporary seizure of his person. *United States v. Campbell*, 741 F.3d 251, 260 (1st Cir. 2013).

In this case, given the totality of the information known to law enforcement, law enforcement could reasonably have concluded that Mr. Trinidad-Acosta or Ms. Proffitt might have been in the vehicle, or that the vehicle was otherwise involved in the drug activity that was the subject of law enforcement's investigation. That information includes the following: that as the result of a lengthy investigation, law enforcement had reliable information that demonstrated that Mr. Trinidad-Acosta and Ms. Proffitt were involved in the sale and distribution of illegal drugs; that the search of two separate residences on November 3 revealed additional information to support law enforcement's belief that Mr. Trinidad-Acosta and Ms. Proffitt were involved in the sale and distribution of illegal drugs; that the newly discovered evidence included information to suggest that Mr. Trinidad-Acosta and Ms. Proffitt maintained several residences, including a residence at 39 Maple Street in Brewer for which Ms. Proffitt was a tenant; that Mr. Trinidad-Acosta and Ms. Proffitt, as well as others involved in the illegal drug activity, were from the Bronx, New York; that Mr. Trinidad-Acosta was known to switch motor vehicles regularly, purportedly to avoid detection; that Mr. Trinidad-Acosta and Ms. Proffitt were last seen driving a black Lexus; that Sgt. Pinnette observed a black vehicle at 39 Maple Street in Brewer, which vehicle appeared to look like a Lexus; that Sgt. Pinnette observed a similar vehicle exit Maple Street; that the vehicle had New York license plates and was registered to Anna-Maria Martinez, a resident of Bronx, New York; and that Anna-Maria Martinez's name was on an envelope in one of the residences that law enforcement searched.[1]

---

[1] Special Agent Renzullo testified that she observed the name on an envelope that was among various papers that were located during the search process. Defendant contends that because law enforcement did not confiscate any such envelope, agent Renzullo's testimony is not reliable. However, given the comparatively short period of time between

Although the vehicle was not the Lexus in which Mr. Trinidad-Acosta and Ms. Proffitt had been known to travel, and despite the fact that Sgt. Pinnette did not observe the vehicle leave 39 Maple Street or identify the vehicle's occupants, particularly when viewed collectively, the information known to law enforcement was sufficient to justify the stop. At the time of the stop, law enforcement had reason to believe that Mr. Trinidad-Acosta and Ms. Proffitt were involved in illegal activity, Mr. Trinidad-Acosta and Ms. Proffitt, and others involved in the illegal activity were from the Bronx, the vehicle was registered to a person from the Bronx whose name was found on an envelope during one of the searches of the property of Mr. Trinidad-Acosta and Ms. Proffitt, and the vehicle was similar to a vehicle that law enforcement observed moments before at a residence leased to Ms. Proffitt. Given these facts, contrary to Defendant's contention, the stop was not the result of the mere "hunch" of the law enforcement officers involved in the investigation. Rather, under the circumstances, law enforcement had a reasonable articulable suspicion to stop the vehicle.

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court deny Defendant's Motion to Suppress.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

---

the search and Sgt. Pinnette identifying the owner of the vehicle, Sgt. Renzullo's testimony that she recalled seeing the name on an envelope is credible.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

April 7, 2014